UNITED STATES of America ex rel.
William L. BRACEY, Jr.

v.

John GRENOBLE, Major Correctional Institution at Camp Hill, Pennsylvania.

Civ. A. No. 69-2334.

United States District Court,
E. D. Pennsylvania.

April 11, 1973.

Leonard Soskin, Legal Intern, Third Year Law Student, University of Pa. Law School, Philadelphia, Pa., for plaintiff.

Israel Packel, Atty. Gen., Harrisburg, Pa., Dante Mattioni, Deputy Atty. Gen., Eastern Region, Michael Minkin, Asst. Atty. Gen., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JOSEPH S. LORD, III, Chief Judge.

This is an action by a prisoner to recover monetary damages allegedly sustained as a result of the violation of his constitutional rights. 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. § 1331(a). The amount in controversy exceeds the sum of $10,000 exclusive of interest and costs.

Plaintiff was a prisoner at the Correctional Institution at Camp Hill, Pennsylvania. His cell was on the B block. On November 18, 1968, rumors of an impending disturbance were circulating in the prison, and an unusually

large number of guards were on duty. Defendant Grenoble was acting major in charge of the guards.

A disturbance did arise, during the course of which the plaintiff admittedly wrestled to the ground one of the two guards then on B block.[1] At this point the B block door opened and two prison officials, Manchester and Truxal, entered. Plaintiff was then sprayed with mace by Manchester and he staggered into the hallway leading away from B block where he was maced a second time.

Plaintiff saw defendant Grenoble in the hallway outside B block. While in the hallway plaintiff was thrown to the floor and beaten with night sticks by a number of guards. He was then taken to D block, the maximum security area. The guards who took him there pushed him into D block and ripped his clothes off. He was struck by Captain Wilkes. He was then taken out the back entrance from D block and pushed down a flight of stairs to an area where he was met by state troopers and the prison doctor.

As a result of these beatings, plaintiff sustained a fractured nose, a bloody right eye, swollen neck, knots on his head, hurt ribs and an injured leg, and was hospitalized for eight days. On February 18, 1970, plaintiff underwent surgery for his broken nose.

The foregoing shall constitute our findings of fact. Those findings are based largely on the testimony of the plaintiff which was straightforward and consistent. We reject out of hand the testimony of the Commonwealth's witnesses. It was shot through with internal inconsistencies and variances from the testimony of one witness to another. As an example, correction officer Brinley testified at the hearing that the plaintiff hit him on the head at least five times with a wrench measuring ten inches to one foot in length. When this same Brinley testified at the plaintiff's trial for assault and battery a short time after the incident, the assault by the plaintiff consisted of a single blow with no mention of the horendous wrench.

The best thing that can be said for the defendant Grenoble is that his memory has deteriorated to the point of no return. At the criminal trial Grenoble testified that he went to the B ward, returned to the office and on the way back to the B ward saw a knife. At our hearing Grenoble's perceptions had been markedly sharpened. He saw the knife the first time he went to B ward. Again, Grenoble testified that he was nowhere in the area at the time of the alleged assault, although in his answers to interrogatories he admitted that he was present at all times and that all actions of the guards were carried out at his orders. These are only a few examples of the embroideries and inconsistencies which make it impossible for us to place any credence whatsoever in the defendant's witnesses, and we do not.

■ While prison officials may take all reasonable steps to insure proper prison discipline without threatened intervention by a federal court, the actions here went far beyond any concept of reasonableness. Such excesses as were perpetrated on this plaintiff violate permissible boundaries of the Eighth and Fourteenth Amendments. There was no showing, even on the gossamer evidence of the defendant's witnesses, that there was any necessity to beat the plaintiff in the way he was beaten, to strip him or to throw him down a flight of steps. Before all of this occurred, the plaintiff had been effectively subdued and was no longer a threat to anyone in the prison hierarchy.

■■ We have no difficulty in concluding that the defendant Grenoble was in charge of the prison guards and had complete control over their actions. When a superior personally directs his subordinates to do acts, or when he has actual knowledge of their acts and ac-

---

1. Plaintiff was prosecuted and convicted of assault in the Court of Quarter Sessions of Cumberland County, Pennsylvania for his participation in this disturbance. However, this is not an issue here.

quiesces in them, he is regarded as having been personally involved and is liable for his own conduct, not on the basis of *respondeat superior* but because of his direct personal involvement. Landman v. Royster, 354 F.Supp. 1302 (E.D.Va. 1973); Wright v. McMann, 460 F.2d 126, 135 (C.A.2, 1972). We hold that Grenoble is liable for the injuries inflicted upon the plaintiff in violation of his constitutional rights.

We have previously recited the extent of the plaintiff's injuries, hospitalization and treatment. The plaintiff is also entitled to damages for the violation of his constitutional rights aside from an actual showing of damages. Via v. Cliff, 470 F.2d 271 (C.A.3, 1972). We find that the totality of the plaintiff's damages, considering the elements to which we have just referred, is $2,500.00.