424 F.Supp. 490 (1977)
Richard Jerome JOHNSON, on behalf of himself and on all others similarly situated, Plaintiff,
v.
Martin HOFFMAN, Individually and in his official capacity as Secretary of the Army, et al., Defendants.
No. 76-555C(4).
United States District Court, E. D. Missouri, E. D.
January 18, 1977.
*491 Christopher T. Hexter, Schuchat, Cook & Werner, St. Louis, Mo., for plaintiff.
Wesley D. Wedemeyer, Asst. U. S. Atty., U. S. Dept. of Justice, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court upon defendants' motion to dismiss, or alternatively for summary judgment, following oral arguments heard on November 12, 1976. Plaintiff filed suit herein, pursuant to 28 U.S.C. §§ 1331, 1343, 1361 and 42 U.S.C. § 2000e et seq., asserting that paragraph 2-34(a) of Army Regulation 40-501 violates his rights under the law. The challenged provision provides:
The causes for rejection for appointment, enlistment, and induction are 
A. Character and behavior disorders, as evidenced by 
(1) Frequent encounters with law enforcement agencies, or anti-social attitudes or behavior which, while not a cause for administrative rejection, are tangible evidence of an impaired characterological capacity to adapt to the military service.
Plaintiff contends that this regulation has a disparate impact upon black persons as it allows the Army to base its decision for rejection upon arrests.
Defendant Martin Hoffman is the Secretary of the Army. Defendant Lt. Gen. R. R. Taylor is the Surgeon General of the United States Army. Defendant Maj. Lee Wilson is the commanding officer of the Armed Forces Examining and Entrance Station in St. Louis, Missouri.
Defendants first argue that the issues raised herein are not justiciable. In support of this position, the Court has been cited to Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). In this case, a doctor petitioned for a writ of habeas corpus, asserting that he had been assigned to menial, and not medical, duties in the military. The Court held that it could not review the discretionary decision of how to assign men, and further stated that:
The military constitutes a specialized community governed by a separate discipline from that of a civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. Id. at 94, 73 S.Ct. at 540.
This attitude of non-intervention was reaffirmed in Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (suit brought by doctor who was court-martialed for disobeying an order to establish a training program and additionally for making public statements against the Army) in which the Court noted
While the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections. The fundamental necessity for obedience and the consequent necessity for imposition of discipline may render permissible within the military that which would be constitutionally impermissible outside it. Id. at 758, 94 S.Ct. at 2563.
Again, in Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973), a suit to restrain the governor of the state of Ohio from prematurely calling out the National Guard, the Court stated:
The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, *492 subject always to civilian control of the Legislature and Executive Branches. The ultimate responsibility for these decisions is appropriately vested in branches of the government which are periodically subject to electoral accountability. Id. at 10, 93 S.Ct. at 2446. [emphasis in original.]
Courts have declined to review discretionary military decisions in a wide variety of contexts. See Schlesinger v. Councilman, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975)(federal courts should not intervene in pending court martial proceeding for sale, transfer and possession of marijuana), reaffirmed in McLucas v. DeChamplain, 421 U.S. 21, 95 S.Ct. 1365, 43 L.Ed.2d 699 (1975); United States v. Tyson, 503 F.2d 1368 (5th Cir. 1974) (court refused to inquire into inductee's physical fitness); Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971), cert. denied, 404 U.S. 865, 92 S.Ct. 68, 30 L.Ed.2d 109 (1971) (court held that issue of hair length was within military discretion and hence not reviewable); O'Mara v. Zebrowski, 447 F.2d 1085 (3d Cir. 1971) (court refused to review determination that reservist report for active service); Arnheiter v. Chafee, 435 F.2d 691 (9th Cir. 1970) (court refused to inquire concerning officer's relief from command).
Nonetheless, courts have reviewed military decisions to determine "[w]hat are the allowable limits of military discretion, and whether or not they have been overstepped in a particular case . . .". Sterling v. Constantin, 287 U.S. 378, 401, 53 S.Ct. 190, 196, 77 L.Ed. 375 (1932). See also, United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955) (court determined that military tribunal could not exercise jurisdiction over ex-serviceman charged with crime committed while in service); Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (court held that the military code would not be applied to civilian dependents); McElroy v. Guagliardo, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960) (court held that there could not be a court martial in peacetime of a civilian employee of the armed forces); O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) (court held that there could not be a court martial unless the crime was service connected).
Plaintiff herein is not challenging the decision that he was unfit for service in the armed forces. Instead, he is challenging the validity of the regulation on which that determination was made. Were plaintiff asserting that the military had exercised its judgment erroneously, the Court would agree that the claim would not be justiciable. Plaintiff, however, is claiming that the regulation on which the decision was based violates his rights under the law. Under these circumstances, the controversy is justiciable. Cf., Vance v. Arizona Army National Guard, et al., No. Civ. 74-329 Phx. (D.C.Ariz.1975) (holding that claim of sex discrimination against the National Guard was justiciable).
Defendants also contend that sovereign immunity bars suit pursuant to 28 U.S.C. §§ 1331 and 1343. Defendants have not asserted that sovereign immunity would bar this suit from proceeding under 28 U.S.C. § 1361, or 42 U.S.C. § 2000e et seq. While there is precedent holding that §§ 1331 and 1343 do not constitute waivers of sovereign immunity, Blaze v. Moon, 440 F.2d 1348 (5th Cir. 1971); Beale v. Blount, 461 F.2d 1133 (5th Cir. 1972), ruling questioned by holding in Penn v. Schlesinger, 497 F.2d 970 (5th Cir. 1974), cert. denied, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976); Thompson v. Link, 386 F.Supp. 897 (E.D.Mo.1974), the Supreme Court has held that a claim of sovereign immunity can not be asserted where
. . . the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional . . . Here, too, the conduct against which specific relief is sought is beyond the officer's powers and is, therefore, not the conduct of the sovereign . . . the power has been conferred in form but the grant is lacking in substance because of its constitutional invalidity. Larson v. Domestic and Foreign Commerce Corporation, 337 U.S. 682, *493 690, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949).
See also, St. Louis University v. Blue Cross Hospital Service, Inc. of St. Louis, 393 F.Supp. 367 (E.D.Mo.1975), modified in part, 537 F.2d 283 (8th Cir. 1976). While the Court is of the opinion that sovereign immunity does not necessarily bar suit pursuant to §§ 1331 and 1343, certain types of relief might be precluded. Bowers v. Campbell, 505 F.2d 1155 (9th Cir. 1974); Revis v. Laird, 391 F.Supp. 1133 (E.D.Cal. 1975).
Defendants argue that the holding in Brown v. General Services Administration, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), that 42 U.S.C. § 2000e-16 provides the exclusive remedy for claims of discrimination in federal employment, requires that plaintiff proceed solely pursuant to 42 U.S.C. § 2000e et seq. Defendants contend, however, that 42 U.S.C. § 2000e et seq. is unavailing because it was not intended to include uniformed members of the armed services. Section 2000e-16(a) provides in part that
All personnel actions affecting employees or applicants for employment . . . in military departments as defined in section 102 of Title 5 . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.
Title 5 U.S.C. § 102 defines the military departments to include the Army. Throughout the legislative history to the 1972 amendments to 42 U.S.C. § 2000e et seq., various references are made to the fact that the federal government employs 2.6 million persons. See United States Senate Committee on Labor and Public Welfare, Legislative History of the Equal Employment Opportunity Act of 1972, 92d Congress, 2d Sess. (1972), pp. 289, 421, 1727 and 1760. As of June 20, 1971, however, there were approximately 2.6 million members of the armed forces and as of June 30, 1972, there were approximately 2.2 million members. The World Almanac and Book of Facts 1976; Information Please Almanac 1976. Under these circumstances, it seems clear that Congress could not have had uniformed members of the military in mind when considering the 1972 amendments. See also Vance v. Arizona Army National Guard, et al., supra, (holding that a state or federal military force is not an employers within the meaning of 42 U.S.C. § 2000e et seq.).
The Court disagrees with defendant's contention that plaintiff may proceed only pursuant to 42 U.S.C. § 2000e et seq., citing Brown v. General Services Administration, supra, and is therefore barred from suit if 42 U.S.C. § 2000e et seq. is held to be inapplicable in these circumstances. The Court is of the opinion that since Title VII does not apply, it cannot be construed to be an exclusive remedy. Accordingly, the Court concludes that jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1343 and 1361 to determine if paragraph 2-34(a) of Army Regulation 40-501 violates plaintiff's rights under the law.
In Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), the Court held that the standards applicable under Title VII were not "the constitutional standard for adjudicating claims of invidious racial discrimination". Id. at 239, 96 S.Ct. at 2047. The Court further stated:
The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race . . our cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact. Id. [emphasis in original.]
Plaintiff's sole contention herein is that the army regulation in question has a "racially disproportionate impact" and is therefore impermissible. While such a claim may be cognizable under 42 U.S.C. § 2000e et seq., the Court is of the opinion that the decision in Washington v. Davis mandates a different result herein. With Title VII stricken as a jurisdictional basis, plaintiff's claim of violation of his rights must stem from the *494 United States Constitution and 42 U.S.C. § 1981. Washington v. Davis, supra, makes it clear that under a Fourteenth Amendment claim, racially disparate impact does not affect constitutionality. Title 42 U.S.C. § 1981 provides that
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
The clear import of this statute is to provide for equal treatment under the law. See Basista v. Weir, 340 F.2d 74, 86 (3d Cir. 1965). Plaintiff does not contend that the regulation was applied only to black persons or that his processing at the Armed Forces Examining and Entrance Station was different from that of whites. Instead he claims that the regulation has a disparate impact upon black persons. Title 42 U.S.C. § 1981 is based upon section 1 of the 1866 Civil Rights Act which was passed pursuant to the Thirteenth Amendment. Waters v. Wisconsin Steel Works of International Harvester Company, 427 F.2d 476 (7th Cir. 1970), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). Congress, however, incorporated the 1866 Act into the Fourteenth Amendment and the 1870 Civil Rights Act based thereon. United States v. Wong Kim Ark, 169 U.S. 649, 675, 18 S.Ct. 456, 42 L.Ed. 890 (1898); Young v. International Telephone & Telegraph Co., 438 F.2d 757 (3d Cir. 1971). Under these circumstances, the Court must conclude that claims under § 1981 parallel claims under the Fourteenth Amendment. Since the conduct complained of herein is not prohibited by the Fourteenth Amendment, Washington v. Davis, supra, the Court must conclude that it is not prohibited by § 1981.
Defendants' motion for summary judgment will be granted.