Lanceda RICHARDSON, Individually and on behalf of all others similarly situated, Appellant,

v.

The PENNSYLVANIA DEPARTMENT OF HEALTH, Leonard Bachman, M. D., Individually and in his capacity as Secretary of Health of the Commonwealth of Pennsylvania, Morton D. Rosen, Individually and in his capacity as Deputy Secretary for Administration of the Department of Health, Milton J. Shapp, Individually and in his capacity as Governor of the Commonwealth of Pennsylvania, Ernest P. Kline, Individually and in his capacity as the Lieutenant Governor of the Commonwealth of Pennsylvania, James Wade, Individually and in his capacity as Secretary of the Governor's Office of Administration, Samuel Begler, Individually and in his capacity as Director of the Bureau of Personnel, John McCarthy and C. Herschel Jones, Individually and in their capacity as Commissioners for the Pennsylvania State Civil Service Commission, and Richard C. Rosenberry, Individually and in his capacity as Executive Director of the Pennsylvania State Civil Service Commission.

No. 76–2263.

United States Court of Appeals, Third Circuit.

Argued May 5, 1977.

Decided Aug. 16, 1977.

**490**

David Kraut, Mark B. Segal, Community Legal Services, Inc., Philadelphia, Pa., for appellant.

David Max Baer, Norman J. Watkins, J. Justin Blewitt, Jr., Deputy Attys. Gen., Chief, Civ. Litigation, Robert P. Kane, Atty. Gen., Pa. Dept. of Justice, Harrisburg, Pa., for appellees.

Before GIBBONS, MARIS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This is an appeal from an order of the district court granting defendants' motion to dismiss the complaint of Lanceda Richardson against certain officials of the Pennsylvania Health Department for failure to state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6). We reverse.

Richardson, a black woman, filed a complaint on her own behalf and on behalf of a class of similarly situated persons,[1] alleging that in violation of 42 U.S.C. § 1981 and § 1983 and of the fourteenth amendment she had been improperly discharged from her employment.[2] The defendants are state officers responsible for personnel policies and practices of the Pennsylvania Department of Health. Richardson charges that defendants' practice of using Pennsylvania civil service exam No. 08493 (the "exam") for testing and ranking job applicants for the positions of Laboratory II and Laboratory III Technicians violates her constitu-

tional rights. She alleges that the exam had a discriminatory racial impact on minority job applicants and that the exam was not job-related.

On October 27, 1965, Richardson was given a provisional appointment as a Laboratory Technician II within the Pennsylvania Health Department. Under Pennsylvania law "[a] provisional appointment shall continue only until an appropriate eligible list can be established and certification made therefrom." 71 P.S. § 741.604 (Supp.1976). After several unsuccessful attempts to establish an eligibility list, the State Civil Service Commission established one in the spring of 1975. Richardson competed in the examination which was used to create this eligibility list, and, in fact, was placed on the list. Pennsylvania law, however, requires that only the three highest ranking individuals on the eligibility list be certified for appointment to the position. *See* 71 P.S. § 741.601 (Supp.1976). As Richardson was not one of the top three persons on the list of eligibles she was not certified, and on May 13, 1975, her provisional appointment was terminated.

In her complaint charging that the exam was invalid Richardson alleges: (1) that during her nine and one-half year employment with the Health Department her performance as a Laboratory Technician II was constantly evaluated by her superiors as "Very Good"; (2) that the exam has not been validated to predict success on the job of Laboratory Technician II and III with a reasonable degree of accuracy; (3) that the use of the exam to determine hiring for the position of Laboratory Technician II and III violates 29 C.F.R. § 1607, a regulation of the federal Equal Employment Opportunity Commission; and (4) that the exam has a discriminatory impact on minority applicants in that proportionately fewer minority applicants pass than do whites. The complaint also alleges:

---

1. A motion filed by Richardson requesting class action certification was never ruled upon by the district court.

2. The complaint alleges no cause of action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

18. The defendants knew or reasonably should have known that the use of this Laboratory Technician II and Laboratory Technician III civil service examination to determine hiring for the job in which plaintiff was engaged, would violate her constitutional rights.

.    .    .    .    .

20. Despite their knowledge that the examination for Laboratory Technician II and Laboratory Technician III was not job-related and not validated to predict with a reasonable degree of accuracy success on the job in which plaintiff was engaged and despite their knowledge that the named plaintiff had successfully performed her job for 9½ years, the defendants, *acting in bad faith*, or with reckless disregard for the named plaintiff's constitutional rights, dismissed the named plaintiff.

(Emphasis added).

In granting defendants' Rule 12(b)(6) motion the district court wrote no opinion. Thus we are somewhat in the dark as to the reasoning behind the court's ruling. We do know, however, that the defendant state officials, in moving for a dismissal, relied on *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

■ *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), holds that "if an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited [under Title VII]." A discriminatory intent on the part of the employer need not be proved to show that a testing practice violates Title VII. *Id.* at 432, 91 S.Ct. at 853. Under Title VII exams having a substantially disproportionate disqualifying effect on minorities must be validated in terms of job performance, and such validation requires a probing judicial review of the choices made by those responsible for the test. *See, e. g., Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425–36, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

■ In *Washington v. Davis, supra,* plaintiffs alleged that defendants had utilized employment testing procedures which were racially discriminatory and violated the due process clause of the fifth amendment and 42 U.S.C. § 1981. As in the case *sub judice* no Title VII violations were asserted. The Court held that as plaintiffs' claims were based on asserted violations of the fifth amendment, rather than Title VII, plaintiffs were required to prove not only a discriminatory impact, but also a discriminatory intent on the part of the defendant employers.

Under Title VII, Congress provided that when hiring and promotion practices disqualifying substantially disproportionate numbers of blacks are challenged, discriminatory purpose need not be proved, and that it is an insufficient response to demonstrate some rational basis for the challenged practices. It is necessary, in addition, that they be "validated" in terms of job performance in any one of several ways, perhaps by ascertaining the minimum skill, ability or potential necessary for the position at issue and determining whether the qualifying tests are appropriate for the selection of qualified applicants for the job in question. However this process proceeds, it involves a more probing judicial review of, and less deference to, the seemingly reasonable acts of administrators and executives than is appropriate under the Constitution where special racial impact, without discriminatory purpose, is claimed. We are not disposed to adopt this more rigorous standard for the purposes of applying the Fifth and the Fourteenth Amendments in cases such as this.

426 U.S. at 246–48, 96 S.Ct. at 2051 (footnote omitted). Since the case was before the Supreme Court in the posture of an appeal from a motion by the defendants for summary judgment, and it was undisputed that there was no intentional or purposeful discriminatory action,[3] the Court held that

---

3. In examining the record the Court observes: Nor on the facts of the case before us would the disproportionate impact of Test 21 warrant the conclusion that it is a purposeful device to discriminate against Negroes and hence an infringement of the constitutional

the grant of summary judgment for defendants was proper. At the same time, however, the Court made clear that in cases where intentional or purposeful discriminatory action was charged, discriminatory impact is evidence of such purpose. As Justice White states in the opinion of the Court:

Necessarily, an invidious discriminatory purpose may often be inferred from the totality of relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another.

*Id.* at 242, 96 S.Ct. at 2049. This view, that evidence of discriminatory impact is probative for purposes of establishing discriminatory intent, was also endorsed in Justice Stevens' concurring opinion:

Frequently the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor. For normally the actor is presumed to have intended the natural consequences of his deeds. This is particularly true in the case of governmental action which is frequently the product of compromise, of collective decision making, and of mixed motivation.

*Id.* at 253, 96 S.Ct. at 2054.

■ The instant case, unlike *Washington v. Davis*, is before us on an order granting a Rule 12(b)(6) motion. The standard for reviewing such an order is quite different from that for reviewing Rule 56 orders. The latter may be affirmed if, as in *Washington v. Davis*, there is no dispute as to material facts. The former may be affirmed only if it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim. 2A Moore's *Federal*

*Practice* ¶ 12.08, at 2274 (1975 ed.); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, in considering such a motion we are to give the pleadings a liberal construction. *See* Fed.R.Civ.P. 8(f); *Conley v. Gibson, supra.*

■ Judging the sufficiency of Richardson's complaint by the appropriate Rule 12(b)(6) standard, we are unable to say that it appears to a certainty that she could not prove facts which would bring her within the intentional or purposeful discrimination test of *Washington v. Davis.* She charges that the defendants knew that the selection procedures (the exam and its scoring) have a discriminatory impact on minority job applicants and that it was not job-related. She also charges that defendants used these procedures knowing that she had nine and one-half years of successful performance on the job, that they acted with knowledge that use of the test would violate her constitutional rights, and that they acted "in bad faith." She is entitled to the opportunity to offer proof that the "bad faith" referred to was an intentional and purposeful discriminatory intention in using the test. And as *Washington v. Davis* makes clear, the actual results of an employment selection exam, which according to her complaint were anticipated by the defendants, may be evidence of discriminatory intent. *See Village of Arlington Heights v. Metropolitan Housing Devel. Corp.*, 429 U.S. 252, 264, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Thus it was premature for the district court to conclude that Richardson could prove no set of facts from which a factfinder could infer intentional and purposeful discrimination.

rights of respondents as well as other black applicants. As we have said, the test is neutral on its face and rationally may be said to serve a purpose the government is constitutionally empowered to pursue. Even agreeing with the District Court that the differential racial effect of Test 21 called for further inquiry, we think the District Court correctly held that the affirmative efforts of the Metropolitan Police Department to recruit black

officers, the changing racial composition of the recruit classes and of the force in general, and the relationship of the test to the training program negated any inference that the Department discriminated on the basis of race or that "a police officer qualifies on the color of his skin rather than ability." [*Davis v. Washington*] 348 F.Supp. [15], at 18.

426 U.S. at 246, 96 S.Ct. at 2051.

Richardson also suggests that the holding in *Washington v. Davis* requiring a showing of discriminatory intent is limited to cases based on the fifth or fourteenth amendments. She urges that 42 U.S.C. § 1981, having its separate genesis in the Civil Rights Act of 1866,[4] should be construed consistently with Title VII since, like that title, it is a statutory grant of substantive and remedial rights, rather than a remedy for the enforcement of minimum constitutional requirements. It is not clear whether the Supreme Court intended such a distinction to survive *Washington v. Davis*, but there is no need for us to meet that question now. If Richardson proves intentional discrimination to the satisfaction of the factfinder, her fourteenth amendment claim, brought pursuant to § 1983, will afford full relief. If she proves no more than disparate impact, the district court initially, and we on a full record, can consider the § 1981 issue when it must be decided.

The order of the district court dismissing the complaint will be vacated and the cause remanded for further proceedings.

---

4. *E. g., Runyon v. McCrary*, 427 U.S. 160, 168, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Johnson* *v. Railway Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).