**Clifford MILBURN**

v.

**Steven GIRARD, Donald Guy and City of Philadelphia.**

**Civ. A. No. 75–3322.**

United States District Court,
E. D. Pennsylvania.

Nov. 18, 1977.

David Rudovsky, Philadelphia, Pa., for plaintiff.

Stephen T. Saltz, Deputy City Sol., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Plaintiff filed this civil rights action against the City of Philadelphia, Mayor Frank L. Rizzo, Police Commissioner Joseph O'Neill, and police officers Girard and Guy in November 1975. In March 1977, I dismissed the action against the City, Rizzo, and O'Neill. 429 F.Supp. 865 (E.D.Pa.1977) (*Milburn I*). Plaintiff now moves to amend his complaint to reinstate the City as a defendant and to add claims against the City and the police officers under the Civil Rights Act of 1866.

In *Milburn I*, I summarized the allegations in plaintiff's complaint as follows:

"On November 19, 1974, defendant police officers questioned plaintiff, Clifford Milburn, regarding ownership of the automobile alongside which he was standing.

When Milburn reached. into a leather pouch for identification and proof of ownership, officer Girard also reached into the pouch, explaining that he was searching for a gun. After 'roughly frisk[ing]' him, Girard began to beat the protesting Milburn with a blackjack, stating, 'I'm going to get me a nigger tonight' (Complaint ¶¶ 15–16). Police officer Guy joined in beating Milburn, who sustained severe injuries. Milburn was then placed in a police van. Money was taken from him and was never returned. Milburn was charged with theft, receiving stolen property, unauthorized use of an automobile, assault, and aggravated assault. The theft charge was dismissed at the request of the Commonwealth. Milburn was acquitted of the other charges at trial." 429 F.Supp. at 866. The complaint asserts civil rights claims under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985–1986, and various provisions of the United States Constitution and asserts pendent claims under Pennsylvania law.

I dismissed the civil rights claims against the City because, as I stated in *Milburn I*, 429 F.Supp. at 867–68, and the companion case of *Jones v. McElroy*, 429 F.Supp. 848, 853–60 (E.D.Pa.1977), the City is not a person within the meaning of the Civil Rights Act of 1871 and is not liable for damages in an action asserted directly under the Four-

teenth Amendment. Alternatively, I held that the theories upon which plaintiff sought to impose liability on the City— *respondeat superior*, negligence in training and supervision of the policemen, and (as to the § 1985 claim) conspiracy—could not form a basis for civil rights liability of the City even if the City could be held liable under the 1871 Act or directly under the Fourteenth Amendment.[1] In addition, because I had dismissed the federal civil rights claims against the City, I declined to exercise pendent jurisdiction over plaintiff's state law claims against the City, noting the Supreme Court's admonition in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Indeed, in light of the Supreme Court's decision in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), I questioned whether I had the jurisdictional power to hear the pendent claims against the City. *See Jones, supra*, at 865; *Milburn I*, at 869.[2]

Plaintiff now moves to amend to assert claims against the City and the police officers under the Civil Rights Act of 1866, 42 U.S.C. § 1981,[3] which provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to

---

1. I concluded that, in light of its decision in *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (1976), the Third Circuit would not recognize vicarious liability in civil rights actions. *See Jones, supra*, at 863–64. I also concluded that, in light of recent Supreme Court precedents, intent, rather than negligence, was a necessary underpinning for civil rights liability, at least in "police brutality" cases. *See id.* at 861–63. Finally, I relied on those cases which hold that, "as a matter of law, a municipality acting in its sovereign governmental capacity cannot be a conspirator." *Milburn I*, at 868.

2. I also held that pendent jurisdiction would only be exercised over the state law claims against the police officers for assault, battery, and false imprisonment. *Milburn I*, at 869.

3. The statute is derived from the Act of April 9, 1866, ch. 31, § 1, 14 Stat. 27, which was reen-

acted by the Enforcement Act of 1870, ch. 114, §§ 16, 18, 16 Stat. 144 (1870). It obtained its present official form as U.S.Rev.Stat. §§ 1977–1978 in 1874. Its codified version in Title 42 of the United States Code (42 U.S.C. §§ 1981–1982), which has not officially been enacted into positive law by Congress although it is prima facie evidence of federal law (*see* 1 U.S.C. § 204(a)), is a verbatim duplicate of §§ 1977–1978 of the Revised Statutes. *See Runyon v. McCrary*, 427 U.S. 160, 168–69 n. 8, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Mahone v. Waddle*, 564 F.2d 1018, 1037 n. 1 (3d Cir. 1977) (Garth, J., dissenting). Section 1982 (U.S.Rev.Stat. § 1978) deals with property rights and is not applicable to this case.

Jurisdiction over claims asserted under the 1866 Act is bestowed by 28 U.S.C. §§ 1331 and 1343. *See Mahone, supra* (majority opinion).

make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

In addition to seeking to amend ¶ 1 of the complaint to add § 1981 to the list of statutes under which he sues, plaintiff seeks to amend the factual allegations in ¶ 22 to add the following averment:

"The acts complained of herein were motivated by unlawful racial considerations and plaintiff, a black male, was deprived of his rights as a result of the racially motivated acts of defendants Guy and Girard."

Federal Rule 15(a) provides that once a responsive pleading has been filed, as defendants Girard and Guy have done in this case, the plaintiff may amend his complaint "only by leave of court or by written consent of the adverse party." The rule provides further that "leave shall be freely given when justice so requires." Rule 15(a) has been liberally construed. See, e. g., Chamberlin v. United Engineers and Constructors, Inc., 194 F.Supp. 647 (E.D.Pa. 1961). Indeed, the Supreme Court has stated that denial of leave to amend without any justifying reason is an abuse of discretion. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Plaintiff's motion must be decided in that context.

■ One proper justification for denying leave to amend is futility. Foman, supra, at 182, 83 S.Ct. 227. If the amendment sets forth a claim upon which, as a matter of law, plaintiff is not entitled to relief, leave to amend should be denied. Izaak Walton League of America v. St. Clair, 55 F.R.D. 139, 141 (D.Minn.1972), aff'd in part and rev'd in part on other grounds, 497 F.2d 849 (8th Cir.), cert. denied, 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974). It is appropriate, therefore, to consider whether the allegations in plaintiff's complaint state a cause of action under the 1866 Act.

In Mahone v. Waddle, 564 F.2d 1018 (3d Cir. 1977), plaintiffs, two black citizens of Pittsburgh, alleged that two Pittsburgh police officers stopped them without probable cause and "subjected them to racial epithets, verbal harassment, and physical abuse by hands, fists, and nightsticks." 564 F.2d at 1020. The plaintiffs were transported to a police station and falsely accused and convicted of motor vehicle violations. The convictions were based on false testimony given by the policemen. Plaintiffs alleged that the policemen, acting under color of state law, "were 'motivated by racial prejudice,' and acted 'with purpose of depriving Plaintiffs of equal protection and benefits of the law, equal privileges and immunities under the law, and due process . . . .' " Id. at 1020–21 (quoting Complaint). The district court dismissed the action insofar as it was based on the Civil Rights Act of 1866, holding that the facts alleged did not set forth a § 1981 claim and, with regard to the claim against the City of Pittsburgh, that a city could not be held liable under the 1866 Act. In what apparently is the first interpretation of § 1981 in the context of "police brutality" actions, the Court of Appeals reversed, holding that plaintiffs had properly alleged violation of § 1981's mandate that "[a]ll persons . . . shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, [and] penalties":

"Plaintiffs have alleged that the City's police officers, clothed with the authority of the City and the state and motivated by racial bias, verbally and physically abused them, falsely arrested them, and gave false testimony against them. It seems to us that plaintiffs have in effect alleged that because they are black they were subjected to officially inflicted 'punishment, pains, [and] penalties' other than those to which white persons are subject. In alleging that because of their race they were arrested without probable cause or warrant and that they were convicted by false testimony of crimes they

did not commit, plaintiffs have in effect charged that the City's officers denied them the same 'full and equal benefit of . . . laws and proceedings for the security of persons . . . as is enjoyed by white persons.' We therefore believe that the facts alleged fall within the broad language of both the equal benefits and like punishment clauses of section 1981." 564 F.2d at 1028 (footnote omitted).[4]

The allegations in this case are strikingly similar to those in *Mahone*. Plaintiff asserts that he was beaten by policemen during a conspiracy to deprive him of his rights because he is black. He also asserts that he was prosecuted on various criminal charges "notwithstanding the fact that [the] defendants knew that Plaintiff Milburn had committed no unlawful act." Complaint ¶ 22. This case fits squarely within the holding of *Mahone* that allegations such as this sufficiently set forth a claim under the Civil Rights Act of 1866.

■ Plaintiff asserts his § 1981 claim against the City of Philadelphia, as well as against Officers Guy and Girard. In *Mahone*, the Court of Appeals rejected the contention that the 1866 Act does not impose liability upon municipalities. It noted that the 1866 Act is separate and distinct from the Civil Rights Act of 1871, which excludes municipalities from liability, and noted that the 1866 Act contains no indication of a similar exclusion either in its wording or legislative history. 564 F.2d at 1030–1031. The *Mahone* majority also disagreed with an argument made in dissent by Judge Garth that a historical overview of the substantive and jurisdictional statutes enacted by Congress for civil rights enforcement demonstrated that Congress did not intend that municipalities be held liable for § 1981 violations. *Id.* at 1031–1036. In light of this holding, I am compelled to rule that the City of Philadelphia may be held liable under § 1981, notwithstanding that I agree with Judge Garth's conclusion that § 1981 was not intended to be applied in this manner.

■ It is now firmly established that a person is not liable for deprivation of the constitutional right to equal treatment unless he acted with the intent to discriminate. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (violation of Equal Protection Clause of Fourteenth Amendment); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (violation of Due Process Clause of Fifth Amendment). Although there has been little discussion of the issue in the cases, courts which have considered the question have held that the intent requirement also applies to actions under the Civil Rights Act of 1866. *See Resident Advisory Board v. Rizzo*, 564 F.2d 126, 140–45 (3d Cir. 1977) (*semble*), aff'g 425 F.Supp. 987, 1024 (E.D.Pa.1976); *City of Milwaukee v. Saxbe*, 546 F.2d 693, 705 (7th Cir. 1976); *Croker v. Boeing Co.*, 437 F.Supp. 1138, 1181 (E.D.Pa. 1977); *Johnson v. Hoffman*, 424 F.Supp. 490, 494 (E.DMo.1977). *See also Richardson v. Pennsylvania Department of Health*, 561 F.2d 489, 493 (3d Cir. 1977) (noting, but not deciding, the issue). Although the complaint, as amended, sufficiently alleges intentional discrimination on the part of Girard and Guy, there is no such allegation as to the City.[5] Instead, plaintiff

---

4. In dictum, the Court stated that, although in general § 1981 prohibits private discrimination by persons not acting under color of state law (*Runyon v. McCrary*, 427 U.S. 160, 168–75, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)), the "equal benefit" and "like punishment" clauses of the statute dealt with "relations between the individual and the state, not between two individuals" and therefore did not reach purely private conduct. 564 F.2d at 1029–30. The Court also noted that damages, as well as equitable relief, are available to redress violations of the statute. *Id.* at 1028 n. 14; *see Johnson, supra*, at 460, 95 S.Ct. 1716.

5. Aside from *respondeat superior*, the only theory of liability asserted as to the City is "negligence in failing to adequately train and supervise the individual police officers, defendants herein, directly caus[ing] the injuries and harm suffered by the plaintiff." Complaint ¶ 25.

seeks to hold the City vicariously liable for the § 1981 violations by its police officers under the *respondeat superior* doctrine.

The application of *respondeat superior* to civil rights cases has had a checkered history in this circuit. In *Bracey v. Grenoble*, 494 F.2d 566, 569–70 (3d Cir. 1974), a § 1983 case sometimes characterized as rejecting vicarious liability in civil rights actions, the Court of Appeals merely noted that the parties were not contesting the district court's ruling (356 F.Supp. 673, 675 (E.D.Pa. 1973)), that *respondeat superior* was not applicable to the case and then decided the case on other grounds. One month later, in *Fisher v. Volz*, 496 F.2d 333, 349–50 (3d Cir. 1974), the Court noted a difference of opinion on the issue and rendered a decision limited to the question of punitive damages:

"The undisputed evidence establishes that Volz' personal actions . . . do not warrant his being held liable for punitive damages. [Plaintiff] can prevail, if at all, only by relying on the doctrine of respondeat superior.

The Supreme Court has stated that § 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.' *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). In construing the statute pursuant to this mandate, the courts are divided as to whether vicarious liability under the doctrine of respondeat superior is applicable to actions brought under the statute.

We need not decide at this time whether vicarious liability is ever applicable under § 1983. We hold, however, that it will not support an award for *punitive damages*. A superior police officer may not be subjected to punitive damages because of wrongful acts by a subordinate officer if there is no evidence that the superior officer ordered or personally participated in the acts, or knew or should have known that the acts were taking place and acquiesced in them. *See* Restatement (Second) of Torts § 909. Cf.

*Skeels v. Universal C.I.T. Credit Corporation*, 335 F.2d 846, 851–52 (3d Cir. 1964)." (Emphasis in original; footnote omitted).

In another § 1983 case, *Goode v. Rizzo*, 506 F.2d 542, 550 (3d Cir. 1974), *rev'd on other grounds*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Court noted the inapplicability of *respondeat superior* to municipal officials such as the mayor and police commissioner:

"In the exercise of discretion [in awarding plaintiff attorneys' fees] . . ., the district court should consider the fact that the defendants apparently did not personally participate in the incidents which led to the necessity of injunctive relief. *Respondeat superior* is not applicable in its traditional sense since the defendant officials are not employers. Both subordinates and officials are employees of the governmental unit. *Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). In *Bracey v. Grenoble*, 494 F.2d 566 (3d Cir. 1974), this court assumed, *arguendo*, that no damages for the actions of a subordinate could be imposed upon a governmental official in the absence of his actual knowledge of, acquiescence in, or participation in the unlawful activity. *See also* Vicarious Liability Under § 1983, 6 Ind.L.Rev. 509 (1973)."

Although leaving the question open, these cases certainly did not warmly embrace the concept of vicarious liability in civil rights actions. Last year, the Court of Appeals made its most definitive statement to date on the question. In *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976), Hampton, a federal pretrial detainee, sued the warden and guards of a federal prison under § 1983 for denial of medical treatment. Although the warden was not the guards' employer and the rationale applied in *Goode, supra,* therefore was applicable, the Court disposed of the question of the warden's liability in much broader language:

"We need not dwell at length upon the lack of derivative liability of the warden. Even if liability had been established

Even if § 1981 claims could be based on negligence, I do not believe that this allegation

states a claim of racial discrimination by the City.

against the guards, there is not the slightest evidence showing that the warden had actual knowledge of the unanswered request for medical attention or that he acquiesced or participated in any denial. Moreover, in § 1983 suits liability may not be imposed on the traditional standards of *respondeat superior. Goode v. Rizzo,* 506 F.2d 542, 550 (3d Cir. 1974), *rev'd on other grounds,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see Bracey v. Grenoble,* 494 F.2d 566 (3d Cir. 1974)." 546 F.2d at 1082.

It was in light of the Court of Appeals' statement in *Hampton* that I concluded in *Milburn I,* 429 F.Supp. at 867, and *Jones, supra,* 429 F. Supp. at 863–64, that the Third Circuit would refuse to apply *respondeat superior* to civil rights actions such as this. The holding that the doctrine does not apply appears to be in accord with the majority of decisions on the subject. *See Jones, supra,* at 864 & nn. 35–36 (citing cases). It is based on the view that the civil rights statutes embody a congressional policy of personal accountability for wrongful conduct which should not lightly be supplanted in favor of judicial notions as to adequacy of remedies. *See Jones, supra,* at 864; *Veres v. County of Monroe,* 364 F.Supp. 1327, 1331–32 (E.D.Mich.1973), *aff'd mem.,* 542 F.2d 117 (6th Cir. 1976).

The majority opinion in *Mahone, supra,* has undermined this view. Language in that opinion suggests that *respondeat superior* is only inapplicable to actions against municipalities under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and that this is so only because municipalities have been excluded from liability under that statute. The Court stated:

"For the purpose of this appeal, we assume, without deciding, that the con-

duct alleged does violate the guarantees of the Constitution and is actionable under 42 U.S.C. § 1983 against the two police officers. In other than section 1983 actions, their employer would ordinarily also be held liable under the doctrine of *respondeat superior* for their misconduct if it occurred during the performance of their duties and within the scope of their employment. The City of Pittsburgh, however, occupies a position different from that of an ordinary employer; as a municipality, it is not a 'person' within the meaning of § 1983 and thus is absolutely immune from the reach of that section. *Monroe v. Pape,* [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)]." 564 F.2d at 1021 (footnote omitted).

The opinion made no reference to *Bracey, Fisher, Goode,* or *Hampton.* Of course, the ultimate holding in *Mahone* was that the plaintiffs had stated a cause of action under the Civil Rights Act of 1866, 42 U.S.C. § 1981, and that municipalities are not excluded from liability under that statute. The only basis upon which the *Mahone* plaintiffs sought to impose liability on the City of Pittsburgh under § 1981, however, was *respondeat superior. See Mahone,* at 1021. Although the Court never discussed its earlier opinions or the continuing dispute as to the applicability of *respondeat superior* to civil rights actions, I see no way to interpret the Court of Appeals' reversal of the district court and reinstatement of the § 1981 claim against the City of Pittsburgh other than as an endorsement of the applicability of *respondeat superior* to § 1981 actions against municipalities. I need not speculate in this case as to whether that holding will eventually be extended to § 1983 actions as well.[6] For purposes of

---

6. The Supreme Court has stated that the Civil Rights Act of 1866 is subject to a broader interpretation than the Civil Rights Act of 1871. *District of Columbia v. Carter,* 409 U.S. 418, 420–25, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). It may be, therefore, that the Court of Appeals' failure in *Mahone* to refer to its earlier statements regarding *respondeat superior* in § 1983 cases was a result of this distinction, although this conclusion derives no support from the

language of the opinion itself. Of course, if *respondeat superior* is held applicable to § 1983 actions, the situations in which liability actually is imposed under the doctrine would be rare. If the defendant is a governmental entity, the restrictive definition of the word "person" in the 1871 Act would exclude it from all liability. *See Moor v. County of Alameda,* 411 U.S. 693, 706–10, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). If the defendant is a supervising official, *re-*

this case, I need only hold that insofar as plaintiff is asserting an action under the Civil Rights Act of 1866, the action may be asserted against the City of Philadelphia on the theory of *respondeat superior.*

▮▮▮▮ Defendants contend that an amendment to assert a § 1981 claim should not be permitted because the statute of limitations on that claim has run. Because there is no federal statute of limitations for § 1981 claims, the controlling period is "the most appropriate one provided by state law." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *accord Runyon v. McCrary,* 427 U.S. 160, 179–82, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). The conduct of which plaintiff complains—infliction of physical injury and improper arrest—is tortious in nature. In tort cases, Pennsylvania applies a two year limitations period to actions for such intentional torts as assault and battery and all other damage actions for personal injury,[7] a one year period to damage actions for malicious prosecution or false arrest,[8] and a six year period to most other actions.[9] Which of these statutes applies to a § 1981 suit depends on an analysis

of plaintiff's claim to identify the state tort cause of action to which it is most closely related. In making this analysis, the claim should be viewed from the perspectives of the defendants' conduct, the plaintiff's injury, and the relief requested. *Meyers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894, 900–01 (3d Cir. 1977). The complaint alleges that the defendant police officers intentionally struck plaintiff, inflicting physical injury, and that they arrested plaintiff illegally and without probable cause. The relief requested is compensatory and punitive damages. In view of plaintiff's allegations, I have no difficulty concluding that this § 1981 claim is closely analogous to an action for assault and battery, which is governed by the two year limitations period, and false arrest, which is governed by the one year period. *See generally Gagliardi v. Lynn,* 446 Pa. 144, 285 A.2d 109 (1971) (discussing the false arrest statute); *Polite v. Diehl,* 507 F.2d 119, 122–23 (3d Cir. 1974); *Lopez v. White,* Civil No. 75–3681, slip op. at 3–5 (E.D.Pa., Oct. 9, 1977). Since the conduct complained of took place on November 19, 1974, this amendment is being filed beyond the limitations periods applicable to the § 1981 claim.

*spondeat superior* would be inapplicable because the official would not be the wrongdoer's employer. *Goode, supra,* 506 F.2d at 550; *Milburn I,* 429 F.Supp. at 867 (dismissing claims against defendants Rizzo and O'Neill). For an example of a case in which the doctrine would control, *see Hill v. Toll,* 320 F.Supp. 185, 188–89 (E.D.Pa.1970).

7. Pennsylvania's general statute of limitations dates back to the colonial era. Enacted in 1713, it provides, in part:

"[A]ll actions of trespass, of assault, menace, battery, wounding and imprisonment, or any of them . . . shall be commenced and sued within the time and limitation hereafter expressed, and not after; that is to say, . . the said actions of trespass, of assault, menace, battery, wounding, imprisonment, or any of them, . . . within two years next after the cause of such actions or suit, and not after . . ." 12 P.S. § 31.

In addition, an 1895 statute applicable to personal injury actions provides:

"Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the

injury does result in death the limitation of action shall remain as now established by law." 12 P.S. § 34.

8. A 1935 statute provides:

"Every suit to recover damages for malicious prosecution or for false arrest, because of a right of action hereafter accruing, must be brought within one year from the date of the accruing of such right of action, and not thereafter . . . ." 12 P.S. § 51.

Section 2 of that statute (Act No. 196, § 2, 1935 Pa. Laws 503) repealed "[a]ll acts or parts of acts inconsistent herewith."

9. The Statute of Limitations of 1713, 12 P.S. § 31, provides for a six year period for actions of trespass quare clausum fregit, detinue, trover, replevin, and "taking away goods and cattle"; actions "upon account and upon the case"; and various contract actions. Insofar as this statute is inconsistent with the personal injury statute of limitations in the 1895 act, 12 P.S. § 34, it impliedly has been repealed. *Walker v. Mummert,* 394 Pa. 146, 148, 146 A.2d 289, 290 (1958), citing *Peterson v. Delaware River Ferry Co.,* 190 Pa. 364, 42 A. 955 (1899); *Rodebaugh v. Philadelphia Traction Co.,* 190 Pa. 358, 42 A. 953 (1899).

■ The date plaintiff files his amendment does not control the statute of limitations issue, however. Federal Rule 15(c) provides:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

The § 1981 claim is based on the alleged beating and false arrest of plaintiff by the defendant police officers, the same conduct which forms the basis for .the theories of recovery set forth in the original complaint. The amendment asserting this claim therefore "relates back" to the date of the original complaint, which was filed on November 18, 1975, within one year of the alleged wrongful conduct for which plaintiff seeks redress. As a result, the § 1981 claim is not barred by the statutes of limitations applicable to this case. Although the City of Philadelphia was dismissed from this case earlier this year, it was named as a defendant in the original complaint and thus had full notice of plaintiff's intention to assert a claim against it. Indeed, even after the claims against the City were dismissed, the City was still involved in this case since it provided legal representation to the defendant police officers. The statutes of limitations therefore do not bar the § 1981 claim against the City.

■ I conclude that plaintiff should be granted leave to amend his complaint to assert claims against the City and defendant police officers under the 1866 Civil Rights Act. The only remaining question is whether reinstatement of the City as a defendant affects any of plaintiff's other claims. The fact that the City may be held liable under the 1866 Act has no bearing on plaintiff's claims under the Civil Rights Act of 1871 because, as noted above, the Supreme Court has interpreted the 1871 Act to exclude municipalities from liability. Liability of the City under the 1866 Act also does not undermine my holding that the City may not be held liable for damages in an action asserted directly under the Fourteenth Amendment in the manner of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); in fact, the Court of Appeals in *Mahone* specifically held that the assertion of an 1866 Act claim in a case obviated any need to recognize a direct Fourteenth Amendment claim in that case. *Mahone, supra*, 564 F.2d at 1024–1025.[10] The City's civil rights liability under federal law therefore is limited to that under the 1866 Civil Rights Act.

■ The presence of an 1866 Act claim against the City does affect plaintiff's pendent state claims, however. In the original complaint, plaintiff sought to hold the City vicariously liable for the state law claims of assault, battery, and false imprisonment. I dismissed those claims as they related to the City because, as discussed above, I felt that

---

**10.** The Court of Appeals stated:

"We must decline to join in [the] debate over a fourteenth amendment, *Bivens*-type remedy. In view of our holding in this case that plaintiffs have stated a cause of action against the City under 42 U.S.C. § 1981, we conclude that a fourteenth amendment remedy should not be implied. . . . If plaintiffs prove the racially motivated deprivations of their rights which they allege, section 1981 will afford them the redress in federal court which they seek. *Bivens* teaches that the existence of an effective and substantial federal statutory remedy for the plaintiffs obviates the need to imply a constitutional remedy on the plaintiffs' behalf, 403 U.S. at 407–11, 91 S.Ct. 1999 (Harlan, J., concurring), and we will therefore affirm the district court's dismissal of the fourteenth amendment claims."
564 F.2d at 1024–1025 (footnote omitted).

exercising pendent jurisdiction over those claims would be an abuse of discretion since I had dismissed all claims against the City under federal law. *Milburn I*, 429 F.Supp. at 869; *see Jones, supra,* 429 F.Supp. at 865, quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The presence of a federal claim under the 1866 Act removes that concern. The Court of Appeals has made it clear that there is judicial power to exercise pendent jurisdiction in this situation. *See Mahone, supra,* 564 F.2d at 1025–1026, 1037; *Gagliardi v. Flint,* 564 F.2d 112, 114–116 (3d Cir. 1977) (allowing exercise of pendent jurisdiction over state law claim against municipality where only federal claim against municipality is based directly on Fourteenth Amendment). So long as the only theory of recovery against the City on the pendent claims is vicarious liability, I see no reason not to allow those claims to be asserted against the City. The City of Philadelphia therefore will be reinstated as a defendant not only as to plaintiff's claims under the 1866 Civil Rights Act, but also as to plaintiff's pendent claims under Pennsylvania law. I emphasize that I make this ruling on the understanding that the only theory of recovery which will be entertained against the City on the pendent claims is vicarious liability for the defendant police officers' commission of assault and battery and false imprisonment. As I explained in *Jones, supra,* at 865, I will not hear pendent claims against the City based on the theory of the City's alleged separate negligence for failure to properly train and supervise the police.

### ORDER

This 18th day of November, 1977, it is

ORDERED that plaintiff is granted leave to amend the Complaint as follows:

1. Paragraph 1 may be amended to read: "This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(1)(2)(3)(4) and the aforementioned statutory and Constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this Court to consider claims arising under state law."

2. Paragraph 22 may be amended to read: "The aforementioned beating of Plaintiff Milburn by defendant police officers Girard and Guy acting individually and in concert, agreement, and conspiracy with each other, was carried out unlawfully, maliciously, and intentionally, notwithstanding the fact that said defendants knew that Plaintiff Milburn had committed no unlawful act and had not attempted to attack, strike, kick, bite, or in any other way assault any of the defendants. The acts complained of herein were motivated by unlawful racial considerations and plaintiff, a black male, was deprived of his rights as a result of the racially motivated acts of defendants Guy and Girard."

It is FURTHER ORDERED that, upon amendment, the City of Philadelphia will be reinstated as a party-defendant for purposes of plaintiff's federal claims under 42 U.S.C. § 1981 and common law claims of assault and battery and false imprisonment.