UNITED STATES of America, Plaintiff,

and

North Carolina Association of Educators, Inc., et al., Plaintiff-Intervenors,

v.

STATE OF NORTH CAROLINA, et al., Defendants.

Civ. No. 4476.

United States District Court,
E. D. North Carolina,
Raleigh Division.

Jan. 27, 1977.

Thomas M. Keeling, Bruce L. Downey, Nathaniel Douglas, Attys. United States Department of Justice, Washington, D. C., for plaintiff.

Stephen J. Pollak, Shea & Gardner, Washington, D. C., Adam Stein, Chambers,

Stein, Ferguson & Becton, Chapel Hill, N. C., for plaintiff-intervenors.

Andrew A. Vanore, Jr., Senior Deputy Atty. Gen., Edwin M. Speas, Jr., Special Deputy Atty. Gen., Elizabeth C. Bunting, Associate Atty. North Carolina Dept. of Justice, Raleigh, N. C., for defendants.

Before HAYNSWORTH, Chief Judge, and CRAVEN, Circuit Judge and DU-PREE, District Judge.

## MEMORANDUM OF DECISION and ORDER

DUPREE, District Judge.

This action comes before the court on two motions of defendants for relief from judgment. For the reasons set out below, the court deems it proper to grant the relief requested and its prior memorandum and judgment[1] will be vacated.

## BACKGROUND

This action was brought initially in October of 1973 by the Attorney General of the United States as a "pattern and practice" complaint[2] against the State of North Carolina, its State Board of Education, and the members of that Board upon allegation of violations of 42 U.S.C. § 2000e, *et seq.*, and the Fourteenth Amendment to the Constitution of the United States in the use of certain minimum cut-off scores on the National Teachers Exam (NTE) as a condition for teacher certification.[3]

A three-judge panel was designated pursuant to 42 U.S.C. § 2000e-6(b) upon request by the Attorney General and certification that the case was one of general public importance.

In January of 1974, the North Carolina Association of Educators (NCAE) and twenty-four individual black teachers, on behalf of themselves and other similarly-sit-

---

1. The memorandum of decision was entered on August 27, 1975, and is published at 400 F.Supp. 343 (E.D.N.C.1975). The court's Order and Judgment No. 1 were filed on October 21, 1975.

2. In that the functions of the Attorney General in bringing such complaints have now been transferred to the EEOC, perhaps the parties should give consideration to having the Commission substituted as a party. See 42 U.S.C. § 2000e-6(c) and (d).

3. For further background on the NTE and its use in North Carolina see 400 F.Supp. 343.

uated techers, moved to intervene as parties plaintiff and jurisdictional allegations were broadened to allege violations of 42 U.S.C. § 1981 and § 1983 as well as 42 U.S.C. § 2000e and the Fourteenth Amendment. Although intervention was allowed on February 12, 1974, that order as well as a pre-trial order entered with the consent of all parties postponed "all legal and factual issues relating to back pay, damages or other monetary relief, including costs and attorneys' fees, and all legal and factual issues relating to class action requirements . . . [until] after the court has determined whether any or all of the teacher certification requirements challenged by plaintiff and plaintiff intervenors are contrary to federal law." [4]

On August 27, 1975, the court issued a decision on the "liability issue" concluding that North Carolina General Statute § 115–153 (Supp.1974), and as amended, was invalid and *unconstitutional* [5] to the extent that it mandated refusal of licensing to otherwise qualified teacher applicants who failed to score as high as 475 on the Weighted Common Examination and 475 on the Teacher Area Examination, or a composite score of 950 on the NTE. Nine express questions as well as the determination of class certification were reserved. 400 F.Supp. 343, 351 (E.D.N.C.1975).

The court's Order and Judgment No. 1 enjoining defendants was entered on October 21, 1975, and contained the following final paragraph:

"This court shall retain jurisdiction of this action for the purpose of deciding the matters and questions reserved in its Pretrial Order of January 21, 1975, and in its Memorandum of Decision and Reservation of Questions of August 27, 1975; for the purpose of receiving evidence and making findings of fact relevant to those matters and questions, and *for such other*

*purposes as may be appropriate.*" (Emphasis added.)

Before the court was able to reconvene to hear the reserved questions, defendants filed two motions for relief from judgment. The first requested the court to vacate and/or reconsider and rehear its order in light of *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), and the second requested relief on the ground of newly-discovered evidence in the form of a validation study of the NTE received by the State Board of Education. The court *sua sponte* also issued a July 22, 1976 memorandum to counsel directing the parties to "rebrief this case" in light of *Washington v. Davis, supra.*

### Procedure for Relief

■ The parties have briefed extensively the issues of the finality of the court's Judgment No. 1 and the propriety of the court granting relief from judgment in light of *Washington, supra.* Emphasis has been focused on the procedures available for relief from judgment under Rule 60(b), F.R.Civ.P. However, the court does not deem it necessary to decide whether it would be proper to grant relief under Rule 60(b) due to changes in decisional law or due to newly-discovered evidence. See Rule 60(b)(2), (5) and (6). Instead, the court concludes that it has authority to revise its prior judgment under the express language of Rule 54(b) which provides:

"(b) Judgment upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only* upon an express determination that there is *no just reason for delay and upon an express*

---

**4.** Rule 42(b), F.R.Civ.P., allows separate trials of any number of claims and issues; see generally, Wright & Miller, *Federal Practice and Procedure*, Civil § 2387.

**5.** The court noted that it was reversing the customary practice of disposing of the case on statutory grounds if possible, e. g., *Hagans v. Lavine*, 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974).

*direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*" (Emphasis added.)

The court deems it more appropriate to revise its judgment under Rule 54(b) rather than Rule 60(b) in that Rule 60(b) by its express terms applies only to "final" decisions. In evaluating the finality of this court's initial opinion, Order and Judgment No. 1, it is important to recognize the jurisdictional basis for the three-judge panel. This is not an action wherein the three judges were convened merely to hear a case seeking an injunction against the enforcement of a state statute because of the unconstitutionality of the statute, 28 U.S.C. § 2281. There was no opportunity for a single judge to proceed with the action pursuant to the procedures outlined in *Hagans v. Lavine, supra,* nor did the court have the option of remanding traditional "non-three-judge issues" to a single judge following the decision and injunction on the constitutional claim. *See Public Service Commission v. Brashear Freight Lines, Inc.,* 312 U.S. 621, 625, 61 S.Ct. 784, 85 L.Ed. 1083 (1941); see generally, Annotation: Three-Judge Courts, 66 F.R.D. 499, 508 (1975). Instead, the three judges were convened under the statutory scheme set out in 42 U.S.C. § 2000e–6(b). All issues, whether constitutional or statutory and whether relating to liability, injunction or damages, were brought and remained before the three-judge panel until entry of final judgment and appeal from that final judgment would lie directly to the Supreme Court.[6]

In this action the court bifurcated the trial, separating "liability" issues from those of damages and class certification. The August 27, 1975 memorandum of decision provided that it was a "partial decision" and reserved nine specific questions in addition to the issues bifurcated in the pretrial order. Further, the Order and Judgment No. 1 provided that "this court shall retain jurisdiction for the purpose of deciding matters and questions reserved . . . and for such other purposes as may be appropriate." Conspicuously absent from this judgment are the Rule 54(b) determinations. Even though the trial was bifurcated, the lesser judgment entered was not certified under Rule 54(b); therefore, it remains subject to revision at any time until all issues and claims have been resolved and judgment is entered on the whole case. *Cf. Leighton v. N.Y.S. and W. Railroad Company,* 306 F.Supp. 513 (D.C.N.Y.1969); Wright and Miller, Federal Practice and Procedure: Civil § 2392.

## EFFECT OF WASHINGTON v. DAVIS

■ The parties have submitted extensive briefs regarding the effect of *Washington v. Davis, supra,* on this court's August 27, 1975 decision and regarding the propriety of granting relief from judgment in light of *Washington.* The court has considered all materials submitted and concludes that an order should be entered relieving defendants from judgment, vacating and withdrawing our prior opinion, granting an extension of discovery, and setting the entire case for reconsideration at a hearing date to be set by the court.

In its initial opinion, the court seemingly applied a traditional Fourteenth Amendment test to the actions taken by defendants. State procedures for teacher certification based on attaining certain minimum scores were characterized as "arbitrary and capricious" due to a failure to validate the selected cut-off score. However, the court's characterization of the actions taken was

6. It is possible that defendants could have appealed the injunction entered on October 21, 1975 pursuant to 28 U.S.C. § 1253; however, even if this appeal were available, it would appear to be only a "permissible" appeal and defendants should not be penalized for awaiting a final judgment rather than pursuing piecemeal appeals.

based on several unstated assumptions which, if not completely undermined by *Washington,* at least require reconsideration in light of that case. In evaluating a *constitutional* challenge to the state's actions, the court assumed:

1. That it was not necessary to inquire into state purpose or intention or to decide the question of deliberate invidious discrimination;

2. That the disparate impact of the NTE on minorities was sufficient in itself to shift the burden of proof to the state to show the "nonarbitrariness" of its action by demonstrating the validity of its 950 cut-off score; and

3. That a standard of job-relatedness approximating the standard employed in Title VII cases as described in *Griggs v. Duke Power*[7] was incorporated into the Fourteenth Amendment and, therefore, the failure of the state to validate its score upon proof of adverse consequences constituted an arbitrary and capricious denial of certification.

The court's assumption that Title VII-type standards were incorporated into the Fourteenth Amendment seemed to be a logical extension of the prevailing law in this circuit[8] and formed a basis for the court's decision to reverse the customary practice and decide the case on "easier" Fourteenth Amendment grounds.[9]

The Supreme Court opinion in *Washington v. Davis, supra,* requires re-evaluation of the above-mentioned assumptions. The court indicated that it had never held the constitutional standard for adjudicating claims of racial discrimination to be identical to the standards applicable under Title VII, nor had it embraced the proposition "that a law or other official act, without regard to whether it reflects a racially-discriminatory purpose, is unconstitutional *solely* because it has a racially dispropor-

tionate impact."[10] Further, in applying the "rational relationship" constitutional test, the court seemed to focus on the relationship demonstrated between the test and a legitimate state purpose and did not require validation of the cut-off score selected in Police Department Test 21. In short, as measured against a constitutional challenge, the court signaled that more deference should be given to seemingly reasonable actions of the state or its officials.

Recently, the Supreme Court has provided further illumination regarding the holding of *Washington v. Davis* and regarding matters to be considered in evaluating a constitutional challenge to state actions. In *Village of Arlington Heights v. Metropolitan Housing Development Corporation,* —— U.S. ——, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the court stated:

"Our decision last Term in *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), made it clear that official action will not be held unconstitutional solely because it results in a racially disproportionate impact. 'Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination.' *Id.,* at 242, 96 S.Ct. at 2049. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." at ——, 97 S.Ct. at 563.

In *Village of Arlington Heights,* the Supreme Court also outlined some factors to be considered in evaluating discriminatory intent, including disproportionate impact, historical background, specific antecedent events, departures from normal procedures and, possibly, statements of decisionmakers. at —— – ——, 97 S.Ct. at 563–65.

In that the underlying basis for this court's initial decision appears questionable in light of *Washington v. Davis* and in that further illumination as to the proper factors

---

7. 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed. 158 (1970).

8. *See Walston v. Co. School Bd.,* 492 F.2d 919 (4th Cir. 1974).

9. See 400 F.Supp. 343, 346, N. 1, and 351, N. 7.

10. 426 U.S. 229, 242, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976).

to be considered in evaluating the constitutionality of the defendants' actions has recently been provided, the court is now of the opinion that the fairest and best solution in this action would be to vacate its prior decision and extend discovery for five months at the conclusion of which the court will reconvene and hear all outstanding questions.

Accordingly, it is now

ORDERED:

1. That the court's opinion of August 27, 1975 as reported in 400 F.Supp. 343 is withdrawn and vacated;

2. That the court's Order and Judgment No. 1, including the injunction issued therein, is vacated; and

3. That discovery in this action shall be re-opened and extended for a period of five months from this date.