Royal Thomas ARNOLD et al., Plaintiffs,

v.

John S. BALLARD et al., Defendants.

No. C 73–478.

United States District Court,
N. D. Ohio, E. D.

March 14, 1978.

Edwin L. Parms, Akron, Ohio and Richard T. Seymour, Washington, D. C., for plaintiffs.

Richard M. Fanelly, Akron, Ohio, Thomas H. Barnard and John T. Meredith, Cleveland, Ohio, for defendants.

William R. Holland, Akron, Ohio, for intervenor-defendants.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

In this class action alleging racial discrimination by the City of Akron, Ohio, in the hiring and promotion of police and fire officers, the Court on January 31, 1975, issued its order and decree which found, on the basis of disproportionate impact on the plaintiffs, that defendants had used hiring procedures which discriminated on the basis of race in the hiring of Akron police officers. *Arnold v. Ballard,* 390 F.Supp. 723 (N.D.Ohio 1975). As part of the relief awarded to plaintiffs, the Court ordered that the City of Akron implement a one-for-two hiring quota for the police department, and that the city continue its affirmative recruiting programs. That order and decree followed the grant of a preliminary injunction in May, 1973, which, *inter alia,* imposed a one-for-one hiring ratio on the Akron fire department. Finally, the parties agreed to two consent decrees. On May 10, 1976, issues concerning promotion and assignment in the police department were resolved (effective September 20, 1976, on the Court's order), as well as substitution of a one-for-two hiring quota for the fire department. On May 17, 1976, the preliminary injunction of 1973 was modified to comport with the terms of the May 10th consent decree.

Meanwhile, defendants had appealed the Court's order and decree of January 31, 1975. The United States Court of Appeals for the Sixth Circuit affirmed that order on June 21, 1976. *Arnold v. Ballard,* No. 75–1756 (6th Cir. June 21, 1976). In the interim, however, the United States Supreme Court announced its decision (on June 7, 1976) in *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), which held that proof of discriminatory intent was required to make out a violation of the Fourteenth Amendment and the equal protection clause in employment discrimination cases. Defendants duly filed a motion for rehearing in the Court of Appeals. On October 18, 1976, the Court of Appeals granted the motion, vacated *its* decision and judgment of June 21, 1976, and remanded this case for reconsideration in light of *Washington v. Davis, supra.* This Court's order and decree of January 31, 1975, was left in full force and effect, and the parties have continued to abide by its terms. (*E. g.,* the compliance report for 1977 was mailed to this Court on January 17, 1978.) The Court has refrained from reconsidering its prior order until this time because of ongoing settlement discussions, which the parties have informed the Court have now been terminated.

The Court now decides that claims of employment discrimination which are brought under 42 U.S.C. § 1981 and/or the Fourteenth Amendment cannot succeed unless the plaintiffs prove purposeful racial discrimination on the part of the defendants. Because the prior order and decree found liability primarily on the basis of disparate discriminatory impact on the plaintiffs, and no finding of discriminatory intent on the part of the City of Akron was made or even deemed relevant, that question of fact must now be resolved before the Court can make its ultimate determination on this remand for reconsideration. However, the Court will defer to the judgment of the parties, in light of this order, whether they wish the Court to rely on the present record in assessing the question of discriminatory intent, or whether additional material and relevant evidence is necessary. But the Court will, in order to shape the scope of that inquiry, discuss some of the prevailing standards for proving the existence of discriminatory purpose.

## I. IMPACT OF WASHINGTON V. DAVIS

Before June 7, 1976, it was the widely accepted rule in this Circuit, as well as others, that a district court could impose numerical relief intended to correct the continuing effects of past racial discrimination when the court found that employment practices had a disproportionate impact on racial minorities. *See, e. g., United States v. Masonry Contractors Ass'n of Memphis, Inc.,* 497 F.2d 871 (6th Cir. 1974). This standard of proof on the issue of the employer's liability, largely borrowed from cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* was also routinely held to apply in cases brought against public employers under the Civil Rights Act of 1866, 42 U.S.C. § 1981. *See, e. g., Bridgeport Guardians v. Bridgeport Civil Service Comm'n,* 482 F.2d 1333 (2d Cir. 1973). This lesser standard of proof was applicable even when the claims under section 1981 were coupled with a claim that the employment practices violated the equal protection clause of the Fourteenth Amendment. That principle was in

obvious contrast to equal protection claims in school desegregation and other constitutional discrimination cases, where proof of intentional racial bias is required. *See, e. g., Keyes v. School Dist. No. 1,* 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973); *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972). It was against that background, and with those accepted principles in mind, that this case was tried and the findings of fact and conclusions of law of the January 31, 1975, order and decree were made. *See generally Arnold v. Ballard, supra.*

■ In retrospect and in light of *Washington v. Davis, supra,* it is now apparent that the federal courts, in their eagerness to redress some of the effects of a long history of racial discrimination in this country, had not made the necessary fine distinctions among claims brought under Title VII, under 42 U.S.C. §§ 1981–1985, and/or under the equal protection clause. *Washington v. Davis* now teaches us quite clearly that we were in error in believing that "proof of discriminatory racial purpose is unnecessary in making out an equal protection violation . . . ." 426 U.S. at 245, 96 S.Ct. at 2050. Proof of intentional discrimination on the basis of race *is* required for all claims brought solely under the Fourteenth Amendment and the corresponding jurisdictional statutes, *e. g.,* 28 U.S.C. §§ 1331, 1343(3). But *Washington v. Davis* did not answer the more narrow question which is now posed in this case: must plaintiffs also prove discriminatory purpose on the part of the defendants on those claims arising solely under 42 U.S.C. § 1981?

The Supreme Court did, however, in Part III of *Washington v. Davis,* imply that proof of discriminatory intent would thereafter be a necessary element of proof for section 1981 claims. The plaintiffs in *Washington v. Davis* had not only alleged violations of the Fourteenth Amendment by the District of Columbia government, but had also brought claims under section 1981 and the Civil Service Act of 1883, 5 U.S.C. § 3304(a)(1). In proceeding to affirm the district court's holding that the defendants

were entitled to summary judgment on both statutory and constitutional grounds, the Court necessarily intimated that Title VII standards were no longer applicable to claims under section 1981. This is because the district court had not found the pre-employment test to be "job-related" as that term had been previously construed in employment discrimination cases. *See Washington v. Davis,* 426 U.S. at 248–250, 96 S.Ct. 2040. That divorce of Title VII from section 1981 also finds support in prior cases holding that, although the two statutes are related and serve many of the same ends, the remedies are separate and distinct. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 461, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

■ But the most important fact about *Washington v. Davis* for present purposes is that it clearly indicates the direction in which the law of employment discrimination is now developing. There is no real dispute that section 1981—a statute specifically enacted in 1866 to implement the broad concerns of the Thirteenth and Fourteenth Amendments—is a much different creature than Title VII, which was enacted in 1964 as a complex, intricate statutory mechanism for the relief of racial discrimination in employment. *See Davis v. County of Los Angeles,* 566 F.2d 1334, at 1340 (9th Cir. 1977) (Decision on Rehearing) (Wallace, J., dissenting). Thus the great majority of courts which have considered this question have concluded that section 1981 must be governed by the same considerations as the constitutional provisions from which it is derived. Accordingly, since proof of discriminatory intent is a necessary element of a constitutional violation after *Washington v. Davis,* the same proof must be required to make out a violation of section 1981. *See .Davis v. County of Los Angeles, supra,* 566 F.2d 1334 (9th Cir. 1977) (Wallace, J., dissenting); *Colaizzi v. Walker,* 542 F.2d 969, 972 (7th Cir. 1976); *Milburn v. Girard,* 441 F.Supp. 184, 188 (E.D.Pa.1977); *Lewis v. Bethlehem Steel Corp.,* 440 F.Supp. 949, 962–966 (D.Md. 1977); *Croker v. Boeing Co.,* 437 F.Supp. 1138, 1181–82 (E.D.Pa.1977); *Guardians Ass'n of N. Y. City v. Civil Serv. Comm'n,* 431 F.Supp. 526, 534 (S.D.N.Y.1977); *Johnson v. Hoffman,* 424 F.Supp. 490, 494 (E.D. Mo.1977).

Two courts have held that proof of discriminatory purpose is still not a necessary element of a claim under section 1981. However, the Court does not find those cases persuasive. In *Dawson v. Pastrick,* 441 F.Supp. 133, 140 (N.D.Ind.1977), there was no discussion of the impact of *Washington v. Davis* on section 1981. In *Davis v. County of Los Angeles, supra,* the Ninth Circuit based its conclusion primarily on a literal reading of *Washington v. Davis,* coupled with a desire not to deviate from established practice in employment discrimination cases absent a direct pronouncement from the Supreme Court. *Davis v. County of Los Angeles, supra* at 1340. Instead, the Court finds more enlightening the detailed analysis of the present issue offered by Judge Wallace, dissenting in *Davis v. County of Los Angeles, supra* at 1338–1341, and by the court in *Lewis v. Bethlehem Steel Corp., supra,* 440 F.Supp. at 962–66. The legislative history of section 1981, prior Supreme Court opinions dealing with the Civil Rights Act of 1866, *e. g., Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), and *Washington v. Davis* can be harmonized only by a holding that proof of discriminatory purpose is required for employment discrimination claims under section 1981. The Court now adopts that rule and to the extent that its order and decree of January 31, 1975, is to the contrary, that order is now modified accordingly.

## II. DISCUSSION OF THE INTENT REQUIREMENT

■ The Court's decision that a successful claim under section 1981 requires proof of discriminatory intent and improper racial motivation, and that its prior opinion and decree must be modified to reflect that decision, does not automatically require vacation of the entire order. Rather, the relief awarded therein is still proper if in fact a violation of section 1981 and/or the equal protection clause of the Fourteenth Amend-

ment has been proven. The only difference now, on this remand for reconsideration, is that for both bases of liability the proof must be resifted in light of prevailing discriminatory intent standards. Before discussing those standards, however, the Court notes that its prior order and decree in no way forecloses consideration of whether the City of Akron engaged in purposeful discrimination. Although the plaintiffs alleged intentional racial discrimination in their complaint, the case was tried and decided in light of the then-prevailing principle that discriminatory impact, absent sufficient justification (e. g., validated "job-related" entrance exams), was enough to impose liability and award appropriate relief. Thus the passing references to intent, or possible lack thereof, on the part of the defendants in the prior order and decree are not dispositive.

The extensive discussion in *Washington v. Davis* of school desegregation and jury discrimination cases strongly suggests that those cases, although there are others equally apposite, now posit the guidelines by which the Court is to assess the question of intentional racial discrimination. But first in order is a recapitulation of the Supreme Court's view of the intent question as expressed in the two most recent cases involving section 1981: *Washington v. Davis,* and *Village of Arlington Hts. v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). In the former, the Supreme Court stated that an inference of purposeful discrimination, when supported by the facts of the case, is permissible:

> Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another. It is also not infrequently true that the discriminatory impact—in the jury cases for example, the total or seriously disproportionate exclusion of Negroes from jury venires—may for all practical purposes demonstrate unconstitutionality because in various circumstances the discrimination is very difficult to explain on nonracial grounds.

*Washington v. Davis,* 426 U.S. at 242, 96 S.Ct. at 2049. Mr. Justice Stevens, concurring, discerned similar principles from previous discrimination cases:

> Frequently the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the action. For normally the actor is presumed to have intended the natural consequences of his deeds. This is particularly true in the case of governmental action which is frequently the product of compromise, of collective decisionmaking, and of mixed motivation. It is unrealistic, on the one hand, to require the victim of alleged discrimination to uncover the actual subjective intent of the decisionmaker . . . . My point in making this observation is to suggest that the line between discriminatory purpose and discriminatory impact is not nearly as bright, and perhaps not quite as critical, as the reader of the Court's opinion might assume, . . . [W]hen the disproportion is as dramatic as in *Gomillion v. Lightfoot,* 364 U.S. 339 [81 S.Ct. 125, 5 L.Ed.2d 110] or *Yick Wo* [*v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220] it really does not matter whether the standard is phrased in terms of purpose or effect.

*Id.* at 253–54, 96 S.Ct. at 2054.

In *Village of Arlington Hts. v. Metropolitan Housing Dev. Corp., supra,* the Supreme Court further clarified its discussion of the intent standard in *Washington v. Davis:*

> Davis does not require a plaintiff to prove that the challenged action rested solely on racially discriminatory purposes. Rarely can it be said that a legislative or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the "dominant" or "primary" one. In fact, it is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality. But racial discrimi-

nation is not just another competing consideration. When there is proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified. Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.

429 U.S. at 265–66, 97 S.Ct. at 563 (footnotes omitted). The Supreme Court then offered a series of factors which, although admittedly incomplete, would be helpful in directing the required "sensitive inquiry": (1) as a starting point, the discriminatory impact of the challenged action; (2) the historical background leading up to the conduct at issue; (3) the specific sequence of events which led to the allegedly discriminatory decisions; (4) any departures from normal procedural requirements; (5) any substantive departures which might suggest that the action was arbitrary; and (6) the administrative history of the challenged conduct, including contemporaneous statements by the decisionmakers involved. *Id.* at 266–68, 97 S.Ct. 555. *See also Harkless v. Sweeny Ind. Sch. Dist.,* 554 F.2d 1353, 1356–57 (5th Cir. 1977).

Recent school discrimination cases also shed light on the contours of the "sensitive inquiry" into purposeful discrimination which this Court must now make. In *Penick v. Columbus Bd. of Educ.,* 429 F.Supp. 229 (S.D.Ohio 1977), the court stated:

The intent contemplated as necessary proof can best be described as it is usually described—intent embodies the expectations that are the natural and probable consequences of one's act or failure to act. That is, the law presumes that one intends the natural and probable consequences of one's actions or inactions. In order for an act to be intentional, it need not only be expected to visit harm or ill will on others. Some intentional acts obviously are designed to produce a harmful result; other such acts are not so designed. . . . [T]he plaintiffs need not prove that the defendants intended to do harm, or acted with ill will.

*Id.* at 252–53 (footnote omitted). The court came to that conclusion after deciding that *Keyes v. School Dist. No. 1,* 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973), and Sixth Circuit cases thereafter, *e. g., Higgins v. Grand Rapids Bd. of Educ.,* 508 F.2d 779 (6th Cir. 1974), did not foreclose use of the "foreseeable effects standard" or the "drawing [of] reasonable inferences from facts found, even when essential elements of proof are supplied from inferences drawn." *Penick v. Columbus Bd. of Educ.,* 429 F.Supp. at 255. The court in *Penick* also discussed the impact of *Washington v. Davis* and *Village of Arlington Hts. v. Metropolitan Housing Dev. Corp.* on the process of proving intentional discrimination, and found those cases to be in harmony with the principles set out in school desegregation cases. *See also Arthur v. Nyquist,* 429 F.Supp. 206, 210–11 (W.D.N.Y.1977) (Buffalo schools case on reconsideration); *Reed v. Rhodes,* 422 F.Supp. 708, 714–15 (N.D.Ohio 1976) (Cleveland schools case; liability decision).

A grand jury discrimination case decided last year by the Supreme Court is instructive as well. In *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), the Supreme Court set out the step-by-step methodology of the prima facie case approach used in such cases.

[I]n order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial under-representation of his race . . . . The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws . . . . Next, the degree of under-representation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. . . . This method of proof, sometimes called the "rule of exclusion," has been held to be available as a method of proving discrimination in jury selection. . . . Finally, as noted above, a selection procedure

that is susceptible to abuse or not racially neutral supports the presumption of discrimination raised by the statistical showing. . . . Once the defendant has shown substantial under-representation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case.

*Id.*, 430 U.S. at 494, 97 S.Ct. at 1280, 51 L.Ed.2d at 510–11 (footnote and citations omitted). *See also Mitchell v. Rose,* 570 F.2d 129 (6th Cir. 1978). Although it can be argued that jury selection cases are special situations which permit use of the "rule of exclusion"/prima facie case means of proof, *see Village of Arlington Hts. v. Metropolitan Housing Dev. Corp., supra,* 429 U.S. at 266 n. 13, 97 S.Ct. 555, there are two considerations which suggest that the "shifting burden" methodology should also apply in other discrimination cases premised on the Fourteenth Amendment and section 1981.

The first is that the Supreme Court supported its discussion of the "rule of exclusion" with citations to, *inter alia, Washington v. Davis* and *Village of Arlington Hts. v. Metropolitan Housing Dev. Corp.:*

The idea behind the rule of exclusion is not at all complex. If a disparity is sufficiently large, then it is unlikely that it is due solely to chance or accident, and, in the absence of evidence to the contrary, one must conclude that racial discrimination or other class-related factors entered into the selection process.

*Casteneda v. Partida,* 430 U.S. at 494, 97 S.Ct. at 1280, 51 L.Ed.2d at 510 n. 13. The second is that the same technique for proving intentional discrimination is applicable in school desegregation cases. *See Keyes v. School Dist. No. 1, supra,* 413 U.S. at 208, 93 S.Ct. 2686; *Penick v. Columbus Bd. of Educ., supra* at 260. On the other hand, the Supreme Court has recently added a new wrinkle to the "shifting burden" analysis. If after the burden of disproving intentional discrimination has shifted to the defendants, defendants alternatively demonstrate that the schools would have become segregated even in the absence of their discriminatory acts or omissions, then a constitutional violation has not occurred. *See Mt.*

*Healthy City School Dist. v. Doyle,* 429 U.S. 274, 285–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Penick v. Columbus Bd. of Educ., supra* at 260. One court has already found that this "but for" rule of causation is applicable in employment discrimination cases arising under section 1981. *See Lewis v. Bethlehem Steel Corp., supra* at 966.

## III. CONCLUSION

The Court has taken the time to discuss the above cases because they all suggest various, albeit similar, approaches that the Court may take in assessing whether plaintiffs have proven that discriminatory purpose was one motivation behind the defendants' conduct in this case. The Court cannot affirm, further modify or vacate its order and decree of January 31, 1975, until it makes a finding on that issue. However, the court believes that additional delineation of the issues and a more particularized review of evidence already on record is necessary before it undertakes the "sensitive inquiry" called for here. Accordingly the Court requests the parties to file supplemental briefs addressing the question whether the "shifting burden" method of proving intentional discrimination should be applied in this case. That discussion should also include argument on whether the *Mt. Healthy* rule of causation is applicable here.

Because this action was originally tried and decided in light of the then-prevailing discriminatory impact standard, the Court is also aware that the record in this case may not reflect all the material and relevant evidence which may be probative of defendants' alleged discriminatory motivation. However, the parties have professed a desire in their briefs on remand to rely on the original record. But since the issue whether section 1981 also requires proof of discriminatory purpose had not been decided in this case until now, the parties may not have briefed with sufficient particularity the evidence already in the record on which they intend to rely. The Court accordingly invites the parties to include in their supplemental briefs a complete discussion of all the present evidence they feel is relevant to and probative of the question of discriminatory purpose.

Finally, the court notes that, because of the previous posture of this case, further evidentiary hearings may be required. *See Chicano Police Officers Ass'n v. Stover*, 552 F.2d 918, 921 (10th Cir. 1977) (per curiam); *cf. United States v. North Carolina*, 425 F.Supp. 789 (E.D.N.C.1977) (extension of discovery). The Court will thus entertain at the time their supplemental briefs are filed a motion by either or both parties for further fact-finding proceedings. The motion shall set forth the reasons why additional evidence is necessary, and what the additional testimony (or documentary evidence) will consist of. Any evidentiary hearing, if held, will be strictly limited solely to evidence which is not already a matter of record. The plaintiffs shall file their supplemental brief within forty-five (45) days of the date of this order. Defendants shall respond within twenty (20) days after that filing.

IT IS SO ORDERED.